## UNITED STATES v. GREEN.

### APPEAL FROM THE COURT OF CLAIMS.

No. 1343. Submitted January 9, 1891. — Decided February 2, 1891.

The plaintiff was a commander in the navy of the United States, with the following record of entry and promotion: in the volunteer service, acting master's mate, May 7, 1861; acting ensign, November 27, 1862; acting master, August 11, 1864: — in the regular service, master, March 12, 1868; lieutenant, December 18, 1868; lieutenant-commander, July 3, 1870; commander, March 6, 1887. He had never received any benefit of longevity pay under that clause in the act of March 3, 1883, 22 Stat. 473, c. 97, providing that "all officers of the navy shall be credited with the actual time they may have served as officers or enlisted men in the regular or volunteer Army or Navy, or both, and shall receive all the benefits

of such actual service in all respects in the same manner as if all said service had been continuous and in the regular navy in the lowest grade having graduated pay held by such officer since last entering the service. *Held*, That, as he was a lieutenant during some days succeeding June 30, 1870, when the act of July 15 took effect, the lowest grade he held having graduated pay was that of lieutenant.

THE case is stated in the opinion.

*Mr. Solicitor General* for appellants.

*Mr. John Paul Jones* and *Mr. Robert B. Lines* for appellee.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

This is an action to recover longevity pay under the clause of the act of March 3, 1883, providing that "all officers of the Navy shall be credited with the actual time they may have served as officers or enlisted men in the regular or volunteer Army or Navy, or both, and shall receive all the benefits of such actual service in all respects in the same manner as if all said service had been continuous and in the regular Navy in the lowest grade having graduated pay held by such officer since last entering the service: *Provided*, That nothing in this clause shall be so construed as to authorize any change in the dates of commission or in the relative rank of such officers: *Provided, further*, That nothing herein contained shall be so construed as to give any additional pay to any such officer during the time of his service in the volunteer Army or Navy." 22 Stat. 473, c. 97.

The plaintiff is a commander in the Navy of the United States, with the following record of entry and promotion: In the volunteer service, acting master's mate, May 7, 1861; acting ensign, November 27, 1862; acting master, August 11, 1864: In the regular service, master, March 12, 1868; lieutenant, December 18, 1868; lieutenant-commander, July 3, 1870; commander, March 6, 1887. He has never received any benefit of longevity pay under the act of March 3, 1883. The court below held that his prior service should be credited on

his grade of lieutenant-commander, not on that of lieutenant, and gave judgment in his favor for $796.08. If such prior service had been credited on his grade of lieutenant, the judgment would have been for only $4.17.   25 C. Cl. 300.

By section 3 of the act of July 15, 1870, making appropriations "for the naval service for the year ending June thirtieth, eighteen hundred and seventy-one, and for other purposes," 16 Stat., c. 295, 321, 330, 332, it was provided "that from and after the thirtieth day of June, eighteen hundred and seventy, the annual pay of the officers of the Navy on the active list shall be as follows :

\*          \*          \*          \*          \*

"Lieutenant-commanders, during the first four years after date of commission, when at sea, two thousand eight hundred dollars ; on shore duty, two thousand four hundred dollars ; on leave or waiting orders, two thousand dollars ; after four years from such date, when at sea, three thousand dollars ; on shore duty, two thousand six hundred dollars ; on leave or waiting orders, two thousand two hundred dollars.   Lieutenants, during the first five years after date of commission, when at sea, two thousand four hundred dollars ; on shore duty, two thousand dollars ; on leave or waiting orders, one thousand six hundred dollars ; after five years from such date, when at sea, two thousand six hundred dollars ; on shore duty, two thousand two hundred dollars ; on leave or waiting orders, one thousand eight hundred dollars."   And section 4 provided : " That the pay prescribed in the next preceding section shall be the full and entire compensation of the several officers therein named, and no additional allowance shall be made in favor of any of said officers on any account whatever, and all laws or parts of laws authorizing any such allowance shall, on the first day of July, eighteen hundred and seventy, be repealed. . . . And from and after the thirtieth day of June, eighteen hundred and seventy, so much of the fourth section of the act approved July fourteen, eighteen hundred and sixty-two, 'making appropriations for the naval service for the year ending June thirty, eighteen hundred and sixty-three, and for other purposes,' as allows to persons in the naval service five

cents per day in lieu of the spirit-ration, is hereby repealed; and from and after that day thirty cents shall in all cases be deemed the commutation price of the navy ration."

By the same act, appropriations were made for the payment of officers and seamen at the designated rates, and all acts or parts of acts inconsistent with that act were thereby repealed.

Under the statute of July 16, 1862, (12 Stat. 583, 586,) in force up to June 30, 1870, the pay of lieutenants was not graduated, but by the act of July 15, 1870, their pay, and that of lieutenant-commanders and other officers therein mentioned, was graduated from and after June 30, 1870. The lawful pay of lieutenants ceased to be what it had been during the prior fiscal year and years preceding, and became for the fiscal year commencing July 1, 1870, as prescribed by the act of July 15. Claimant accordingly received pay for his services on July 1, 2 and 3, 1870, under the latter act, which furnished the measure of his compensation. There was no other statute and no other appropriation in accordance with which his pay was regulated, disbursed and received. Nearly thirteen years after this the act of 1883 was passed, and the extent to which the claimant could avail himself of it depends upon what was the lowest grade having graduated pay held by him since last entering the service; and, as he was a lieutenant during some days succeeding June 30, 1870, when the act of July 15 took effect, we are constrained to hold that the lowest grade he held having graduated pay was that of lieutenant. If the act had been passed ten days before June 30, to take effect on that day, and claimant had become lieutenant-commander within the ten days, the lowest grade held by him having graduated pay attached would have been that of lieutenant-commander, notwithstanding when the act was passed he held a lower grade. And though this act was passed after June 30, yet as Congress directed that it should take effect as of that date, the result must be the same.

In *United States* v. *Rockwell*, 120 U. S. 60, Rockwell re-entered the service as master in March, 1868, and subsequently during that year became lieutenant, and continued in such position until 1878. The government contended that the

lowest grade having graduated pay held by him was that of master, masters being entitled to graduated pay under the act of 1870, but it was held that this view was incorrect, and that the act of 1883 referred to the lowest grade having graduated pay held by the officer after the act providing for graduated pay took effect. Rockwell had ceased to be a master for nearly two years before the act in respect to graduated pay was passed, and consequently that act became operative as to him when he was holding the rank of lieutenant.

In this case, the only law under which claimant could receive pay after June 30, 1870, was the act of July 15, 1870, and as it took effect as of June 30, he was holding the grade of lieutenant at that time, and that fact disposes of this controversy.

It is suggested that the act of July 15, 1870, operated in reduction of earned compensation for services rendered during the fifteen days succeeding June 30, and to that extent was invalid, upon the ground that while the pay of a lieutenant as fixed by the act of 1862 was in terms increased by the act of 1870, yet part of his prior compensation given in lieu of allowances was cut off, and that his total compensation by reason of the equivalent for allowances was larger during the fiscal years prior to June 30, 1870, than that fixed by the act of July 15. But the payments referred to were made in accordance with an order of the Secretary of the Navy of May 23, 1866, which established a fixed rate of compensation in lieu of prior extra allowances at a sum equal to thirty-three and one-third per cent of the pay, and the validity and force of the order depended on the appropriation by Congress of moneys for specified objects connected with the naval service, to the distribution of which the order related. It was upon this view that the opinion of the court, delivered by Mr. Justice Harlan, proceeded in *United States* v. *Philbrick*, 120 U. S. 52, 58, where "the power of the Secretary to establish rules and regulations for the apportionment of the sums set apart by Congress, in gross, for such objects as those involved in the allowances here in dispute," was sustained. The order was not a contract with the naval officers by the Department, and independent of Congressional action.

The appropriation by Congress in this instance was by the act of July 15, 1870, and that act in terms prohibited any extra allowances from and after June 30, so that the act increased the actual pay and did not so disturb any vested rights of the claimant as to give force to his position in this regard, if it would in any aspect have affected the conclusion reached.

*The judgment of the Court of Claims is reversed and the cause remanded with directions to enter judgment for $4.17 in favor of claimant.*