# ROGET *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 80.   Argued December 7, 1892. — Decided March 6, 1893.

The pay of a retired officer of the Navy is fixed by statute at a certain percentage of the active service pay of the grade held by him at the time of his retirement: and there is nothing in the act of March 3, 1883, 22 Stat. 472, c. 97, to modify this rule.

An officer of the Navy who was retired in the first five years of service from a rank having longevity pay, but who was continued on active duty until he had passed into his second five years of service, is not entitled, under the act of March 3, 1883, to a greater rate of pay after active service ceased than seventy-five per centum of the pay of the grade or rank which he held at the time of retirement.

THE case is stated in the opinion.

*Mr. Robert B. Lines,* (with whom was *Mr. John Paul Jones* on the brief,) for appellant.

*Mr. Attorney General* for appellee.

MR. JUSTICE SHIRAS delivered the opinion of the court.

This is an appeal from a judgment of the Court of Claims, finding in favor of the United States and dismissing the petition of the claimant, Eugenia A. Roget, executrix of Edward A. Roget, deceased. Edward A. Roget was a professor of mathematics in the United States navy, having been commissioned July 8, 1864, to rank from May 21, 1864. On August 1, of that year, being then sixty-two years of age, he was placed upon the retired list, in accordance with the act of Congress approved December 21, 1861, 12 Stat. 329, c. 1, which contains the following provisions :

" That whenever the name of any naval officer now in the service, or who may hereafter be in the service of the United States, shall have been borne on the Naval Register forty-five years, or shall be of the age of sixty-two years, he shall be

retired from active service, and his name entered on the retired list of officers of the grade to which he belonged at the time of such retirement.

"Sec. 2. *And be it further enacted,* That the President of the United States be, and he is hereby, authorized to assign any officer who may be retired under the preceding section of this act to shore duty, and such officer thus assigned shall receive the full shore pay of his grade while so employed."

"Sec. 5. *And be it further enacted,* That all officers retired under the provisions of this act shall receive the retired pay of their respective grades as fixed by law."

Under the same act he was continued on active duty until June 30, 1873.

On July 15, 1870, a naval appropriation act was approved, (16 Stat. 321, 331, c. 295,) the third section of which contains, among other provisions, the following :

"That from and after the thirtieth day of June, eighteen hundred and seventy, the annual pay of the officers of the Navy on the active list shall be as follows :

\*            \*            \*      .        \*            \*

"Professors of mathematics and civil engineers, during the first five years after date of appointment, when on duty, two thousand four hundred dollars; on leave or waiting orders, one thousand five hundred dollars; during the second five years after such date, when on duty, two thousand seven hundred dollars; on leave or waiting orders, one thousand eight hundred dollars; during the third five years after such date, when on duty, three thousand dollars ; on leave or waiting orders, two thousand one hundred dollars; after fifteen years from such date, when on duty, three thousand five hundred dollars; on leave or waiting orders, two thousand six hundred dollars."

While performing active service Professor Roget received the full shore pay of his grade, including the increase after five years' service at the rate so provided for. On June 30, 1873, he was relieved from active service in accordance with the naval appropriation act of March 3, 1873, 17 Stat. 547, c. 230, which provides, in the first section, " that no officer on

the retired list of the navy shall be employed on active duty except in time of war."

The same section of that act contains the following provision :

"That those officers on the retired list, and those hereafter retired, who were, or who may be, retired after forty years' service, or on attaining the age of sixty-two years, in conformity with section one of the act of December, eighteen hundred and sixty-one, and its amendments, dated June twenty-fifth, eighteen hundred and sixty-four, or those who were or may be retired from incapacity resulting from long and faithful service, from wounds or injuries received in the line of duty, from sickness or exposure therein, shall, after the passage of this act, be entitled to seventy-five per centum of the present sea pay of the grade or rank which they held at the time of their retirement."

From the time Professor Roget was relieved from duty until November 9, 1887, when he died, he was paid at the rate of $1800 a year.

It was contended by the claimant that under the naval appropriation act, approved March 3, 1883, 22 Stat. 472, c. 97, her testator should have been credited with the time of his active service, from May 21, 1864, to March 3, 1873, and should have received the difference between the pay of a retired professor of mathematics who has been retired within his first five years of service, and the pay of such officer who has been retired within his second five years, or $225 per annum, from July 1, 1873, to the date of his death, being 14 years and 122 days. She therefore asked for a judgment against the United States in the sum of $3200. The Court of Claims, in dismissing the petition, decided that "an officer in the navy who was retired in the first five years of service from a rank having longevity pay, but who was continued on active duty until he had passed into his second five years of service, is not entitled, under the act of March 3, 1883, to a greater rate of pay after active service ceased than seventy-five per centum of the pay of the grade or rank which he held at the time of retirement." 24 C. Cl. 165.

The portion of the act of March 3, 1883, relied upon by the claimant is as follows:

" And all officers of the navy shall be credited with the actual time they may have served as officers or enlisted men in the regular or volunteer army or navy, or both, and shall receive all the benefits of such actual service in all respects in the same manner as if all said service had been continuous and in the regular navy in the lowest grade having graduated pay held by such officer since last entering the service : *Provided,* That nothing in this clause shall be so construed as to authorize any change in the dates of commission or in the relative rank of such officers : *Provided further,* That nothing herein contained shall be so construed as to give any additional pay to any such officer during the time of his service in the volunteer army or navy."

Prior to the approval of the act containing the foregoing provisions there had been three statutes operating to affect the pay of professors of mathematics retired at the age of sixty-two years, namely, the said acts of 1861, 1870 and 1873. The first gave authority for the assignment of any retired officer to shore duty, and provided that such officer thus assigned should receive the full shore pay of his grade while so employed; the second provided for longevity pay for officers on the active list, including professors of mathematics : and the third fixed the pay of officers so retired at seventy-five per centum of the sea pay of the grade or rank which they held at the time of their retirement. The precise effect of these acts may be readily seen by a brief examination of certain terms employed in them. By the act of March 3, 1835, (4 Stat. 756,) professors of mathematics were regarded as being subject to sea duty, the language used in fixing their pay being as follows: " When attached to vessels for sea service, or in a yard, one thousand two hundred dollars." They are so regarded also by the act of August 31, 1842, (5 Stat. 576, c. 276,) which provides that they " shall be entitled to live and mess with the lieutenants of seagoing and receiving vessels ;" and by the act of August 3, 1848, § 12, (9 Stat. c. 121, pp. 266, 272,) providing that they " shall perform such duties as

may be assigned them by order of the Secretary of the Navy, at the Naval School, the Observatory, and on board ships of war, in instructing the midshipmen of the navy, or otherwise." Though the act of June 1, 1860, sec. 3, (12 Stat. 23, 27, c. 67,) declares that "no service shall be regarded as sea service but such as shall be performed at sea under the orders of a department, and in vessels employed by authority of law," the same statute, as well as others, in fixing the pay of professors of mathematics, provided for but one rate of pay for such officers while on duty. It may, therefore, be considered that a professor of mathematics assigned after his retirement to shore duty would be entitled to the highest pay of his grade while so employed, which would be as well his sea pay as his shore pay. The grade of an officer in the navy is his official station, by which are regulated his powers, duties and pay. His pay may be further governed by his time of service within a grade, either in fact rendered within the grade, or constructively performed therein through the force of statutes. That the office of professor of mathematics is a grade, is recognized by the act of April 17, 1866, sec. 7, (14 Stat. 38, c. 45,) which provides, "That hereafter no vacancy in the grade of professor of mathematics in the navy shall be filled."

The operation of the statutes of 1861, 1870 and 1873, in the case of Professor Roget was to give him pay during the time he performed active service, as though he were on the active list, including the longevity increase provided for by the act of 1870, and, after his active service ended, to give him seventy-five per cent of the sea pay, (which was also, in his case, the shore pay,) provided for by the act of 1873, attached to the grade which he held at the time of his retirement. This being unquestionably the legal effect of the acts approved prior to 1883, the single question involved is whether, under the act of March 3 of that year, he was entitled to have active service credited in regulating his pay as a retired officer after his active service ceased.

Ever since the retired list of the navy was established, the pay of a retired officer, as such, has been fixed by statute at a

certain per centum of the active service pay of the grade held by such officer at the time of his retirement. His active service pay at that time has always been taken as the basis in ascertaining his future pay, and we are unable to discover in the act in question any design to modify this persistent rule.

It would appear not only that Congress has manifested no intention by the act of 1883 to change the laws governing the pay of retired officers, but that it has, in at least one instance, shown the contrary purpose. By a provision in the fifth section of the act of July 15, 1870, no officer promoted upon the retired list "shall, in consequence of such promotion, be entitled to any increase of pay."

It can hardly be the intention of counsel to assume that the amount of pay in question in this case should be calculated as though Professor Roget was retired in 1873 instead of in 1864. The retirement of an officer is a proceeding that can only take place in a prescribed manner, and it is not pretended that such proceeding occurred, with reference to that officer, more than once.

The Court of Claims was right in dismissing the petition of the claimant, and the judgment of that court is

*Affirmed.*