# UNITED STATES *v.* ALGER.

## APPEAL FROM 'THE COURT OF CLAIMS.

*No. 885. Submitted January 8, 1894. — Decided January 22, 1894.*

Under the act of March 3, 1883, c. 97, 22 Stat. 473, an officer in the Navy, who resigns one office the day before his appointment to a higher one, is only entitled to longevity pay as of the lowest grade, having graduated pay, held by him since he originally entered the service.

THIS was a claim by a professor of mathematics in the Navy for $32.87, alleged to be due him for longevity pay from November 11, 1890, to November 30, inclusive. The petition alleged that during that period he had been allowed and paid at the rate of $2400 per annum, being the shore pay of a professor of mathematics in the first five years after the date of appointment; whereas, as he contended, he should have been paid at the rate of $3000 per annum, being the pay of a professor of mathematics in the third five years from the date of appointment, by reason of his prior service in the Navy from September 22, 1876, to November 10, 1890, by virtue of the provision of the Naval Appropriation Act of March 3, 1883, c. 97, which is as follows :

"And all officers of the Navy shall be credited with the actual time they may have served as officers or enlisted men in the regular or volunteer Army or Navy, or both, and shall receive all the benefits of such actual service in all respects in the same manner as if all said service had been continuous and in the regular Navy in the lowest grade, having graduated pay, held by such officer since last entering the service : Provided, that nothing in this clause shall be so construed as to authorize any change in the dates of commission or in the relative rank of such officers : Provided further, that nothing herein contained shall be so construed as to give any additional pay to any such officer during the time of his service in the volunteer Army or Navy." 22 Stat. 473.

The petition also alleged, and the Court of Claims found,

the following facts: "Claimant was appointed cadet midshipman September 22, 1876; graduated June 22, 1882, and promoted to midshipman the same day; commissioned ensign June 26, 1884. Resigned November 10, 1890, and resignation accepted to take effect the same day. November 11, 1890, appointed professor of mathematics, to rank from November 1, 1890; accepted the appointment and took the required oath of office the same day. He was given credit, upon his commission as ensign, for his services as cadet midshipman, and as a midshipman, and was paid the pay of an ensign after five years of service, from June 26, 1884, to the date of his resignation. He has not been allowed credit under the act of March 3, 1883, in the lowest grade, having graduated pay, since he entered the Navy as professor of mathematics by appointment as aforesaid."

Upon these facts, the Court of Claims decided, as a conclusion of law, that the claimant was entitled to recover the sum claimed, and gave judgment accordingly. The United States appealed to this court.

*Mr. Assistant Attorney General Dodge* and *Mr. Felix Brannigan* for appellants.

*Mr. John Paul Jones* and *Mr. Robert B. Lines* for appellee.

Mr. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

The theory of longevity pay was well stated by Chief Justice Drake, speaking for the Court of Claims, in an opinion cited by both parties in this case, in which he said: "There was, no doubt, an underlying principle and purpose in the introduction of longevity pay into the Navy. We think it was intended, first, to induce men to enter the Navy and remain in it for life; second, to remove the depressing influence of long periods of service in one grade without an increase of pay; third, to compensate for increased professional knowledge and efficiency in officers by increasing their pay in advance of

promotion. If these views are correct, the whole basis of longevity pay is the officer's capacity for duty, and his performance of it. In other words, longevity pay is for longevity in actual service." *Thornley* v. *United States*, 18 C. Cl. 111, 117.

Accordingly, a retired officer is not entitled to have active service credited in regulating his pay after his active service has ceased. *Thornley* v. *United States*, 113 U. S. 310, and 18 C. Cl. 111; *Roget* v. *United States*, 148 U. S. 167, and 24 C. Cl. 165.

But every officer in active service is entitled, by the Naval Appropriation Act of March 3, 1883, c. 97, to be credited with the time of his actual service in the Navy in any grade, " as if all said service had been continuous and in the regular Navy in the lowest grade, having graduated pay, held by such officer since last entering the service." 22 Stat. 473.

The whole aim and scope of the act are to give the officer, in the grade held by him after its passage, the benefit of the whole time of his actual service, and to fix the rate of increased compensation by the lowest grade, having graduated pay, held by him " since last entering the service." *Barton* v. *United States*, 129 U. S. 249, and 23 C. Cl. 376; *United States* v. *Foster*, 128 U. S. 435. The act is as applicable to those officers whose actual service has been continuous, as to those who have actually served at two or more distinct periods. If an officer has been twice in the service, the grade, the pay of which is the test of computation, is the lowest held by him since entering the service for the second time. *United States* v. *Rockwell*, 120 U. S. 60, and 21 C. Cl. 332. But if he has entered the service but once, his first entry is to be taken as his last entry, within the meaning of the statute. *United States* v. *Mullan*, 123 U. S. 186; *United States* v. *Green*, 138 U. S. 293.

By section 1556 of the Revised Statutes, fixing the rate of pay of officers in the Navy, the pay of cadet midshipmen or of midshipmen is not graduated by length of service; but the pay of ensigns, as well as of professors of mathematics, is so graduated.

This claimant was continuously in active service from Sep-

tember 22, 1876, to November 10, 1890, first as cadet midshipman, then as midshipman, then as ensign. On November 10, 1890, he resigned the office of ensign, and his resignation was accepted to take effect on the same day. On the next day, November 11, he was appointed professor of mathematics, to rank from November 1, and immediately accepted the appointment and took the oath of office.

There is no doubt that the time, with which he is to be credited, began on September 22, 1876, the date of his appointment as a cadet midshipman. *United States* v. *Hendee*, 124 U. S. 309; *United States* v. *Baker*, 125 U. S. 646; *United States* v. *Cook*, 128 U. S. 254.

The controverted question is as to the grade, by which his longevity pay as a professor of mathematics is to be computed; and this depends upon the question whether the date of his "last entering the service" is the date of his appointment as professor of mathematics, in which case the pay of that office is the test; or the date of his original appointment as cadet midshipman, in which case the test is the pay of an ensign, that having been his lowest grade with graduated pay. The question is, in short, whether his actual service was for two distinct periods, or for a single and continuous period of time.

This court is of opinion that, in substance and in law, it was for one continuous period. His express resignation of the lower office, the very day before his appointment to the higher office, and when he must have known of and counted upon the coming appointment, was evidently tendered with no intention of leaving the service, and was but equivalent to the resignation which the law would have implied from his acceptance of the higher office. The fact is therefore immaterial (which might otherwise be significant) that his new appointment was to rank from a date before his resignation of the old one. If such a formal resignation were sent in for the purpose of eluding the statute and claiming longevity pay on the higher scale, the attempt would be as unbecoming in the officer or his advisers, as it would be ineffectual to charge the United States.

The result is that the longevity pay to which the claimant

is entitled since his appointment as professor of mathematics (as before this appointment) is that of ensign only, that having been "the lowest grade, having graduated pay, held by such officer since last entering the service," within the meaning of the statute.

*Judgment reversed, and case remanded for further proceedings in conformity with this opinion.*