Davis, J.,
delivered the opinion of the court:
Plaintiff served in the Army during the late war and was honorably discharged. Later, and after a civil-service examination, he was made a clerk in an Executive Department; then (at his request) he was transferred to another Department; there he secured promotion; then he was (following his wish) transferred to the Department of the Interior and assigned to duty as a clerk in the Pension Bureau, where our interest in him begins'; later he was reduced in rank, and still later he was discharged.
The discharge he alleges to have been without fault or deficiency on his part. "
*184 The following order was signed by the Commissioner of Pensions:
“The discharge of Mr. Morris Keim was recommended because of his rating as inefficient. No other charges are made against him.”
The substantial point in the case concerns the power of the court to examine into the course of an officer of a principal Executive Department of the United States in advancing or degrading or dismissing' a subordinate who has entered the executive service through the recommendation of the Civil Service Commission and who is also an hon orably'diseharged soldier.
Defendants assert that the plaintiff was not sufficiently competent. This is denied, and an effort is made to show that he was competent; that he was dismissed for other reasons than lack of sufficient ability, and that (in any event) he was not given the preference to which on (otherwise) even.terms the former soldier is entitled. _
The statutes provide:
“Persons honorably discharged from the military or naval service by reason of disability resulting from wounds or sickness incurred in the line of duty shall be preferred for appointments to civil offices, provided they are found to possess the business capacity necessary for the proper discharge of the duties of such offices. (Sec. 1754, R. S.)
“That whenever in the judgment of the head of any Department the duties assigned to any clerk of one class can be as well performed by a clerk of a lower class, or by a female clerk, it shall be lawful for him to diminish the number of the clerks of the higher grade and increase the number of the clerks of the lower grade within the limit of the total appropriation for such such clerical service: Provided, That in making any reduction of force in any of the Executive Departments, the head of suchDepartment shall retain those persons who may be equally qualified who have been honorably discharged from the military or naval service of the United States, and the widows and orphans of deceased soldiers and sailors.” (See 3, Supp. to R. S., vol. 1, p. 120; act 115th August, 1876, 19 Stat. L., 169, sec. 3.)
Plaintiff relies upon the statute of August 15, 1876, above quoted, contends that the proviso is mandatory and the acts done under it may be the subject of judicial determination.
The first line of the section expressly states that the comparative performance of certain clerks shall be determined by “ the judgment of the head of any Department.” In the pro *185 viso a comparison is also directed between persons who may be equally qualified to perform tlie duties assigned to them;that is, between clerks who have been iu the military or naval service and those who have not been in either service. To entitle the former to retention in service they must be equally qualified. The statute does not say whether this shall be determined by the records of an Executive Department or by the courts. By whom shall it be determined f The enacting-clause of the section (act of 1876) answers the inquiry by saying that it shall be determined by the “judgment” of the head of the Department. It is not correct to say that one rule is prescribed by the enacting clause and a different rule by the proviso. The judgment of the head of the Department is as applicable in the one class of cases as in the other; and the qualifications of the. clerk to be appointed in the one class or of the clerk to be retained in the other are necessarily matters committed to the judgment of the head of the Department within the intent and meaning of the statute.
The first question to consider is as to our power. May a court enter an Executive Department, examine the acts of the principal officer, inquire into his exercise of discretion, put him, in effect, upon the witness stand, and investigate the reasons which influenced the exercise of this discretion?
Plaintiff seeks to show that other clerks were less efficient than he, and that these clerks were retained while he was discharged. Who is to decide as to this efficiency, the superior administrative officer, responsible for the efficient conduct of his office, and dependent upon this for his reputation and tenure; the officer presumably competent and upright and always subject to still superior Executive control and legislative supervision — is he to decide this, or are the courts?
The civil-service laws provide for entrance into Government employ; they direct that (other things being equal) the soldier shall have preference, but someone in authority must in each instance decide whether the former soldier has placed himself in such a position of equality with his colleagues as to be entitled to the statutory advantage.
In our opinion there is but one question presented in this' record, to wit: Is a court to decide whether a clerk has so performed his work as to bring himself within the protected class, or have that clerk’s executive superiors the power and the duty to make that decision, and to make it finally?
*186 The plaintiff had a right “to be preferred for appointment” if found to possess the necessary business capacity. It might be urged that as he was in fact appointed, power under this statute was exhausted. We need not discuss that point; the case is too important to pause at a slight issue. The purport and intent of the law are evident and admitted, that the soldier, under equal conditions, shall be favored. Who is to decide as to this equality"? Who is to say whether any one individual is equally efficient with his rival? Is this power lodged in the superior executive officer, or are the courts to investigate the records not only of clerks discharged or clerks reduced in pay, but also to compare their records with those of their colleagues or rivals, and then to decide judicially that the superior executive officer has erred aud has discharged or promoted the wrong man?
As a broad principle, the power to appoint implies the power to remove (People ex rel. McCullough v. Cram, 36 N. Y. Sup. Ct., 1117). The Supreme Court of the United States (ex parte Hennen, 13 Peters, 230; Parsons v. U. S. R., 30 C. Cls. R., 222, and 167 U. S. R., 324) have held:
“There can be no doubt that these clerks hold their office at the will and discretion of the head oj the Department. It would be a most extraordinary construction of the law that all these officers were to be held during life, which must inevitably follow, unless the incumbent was removable at the discretion of the head of the Department.”
The power to appoint has been limited by the civil-service laws; the power to remove, however, remains unimpaired in, the executive except for this, that (other things being equal) the removing power must retain the man who has served during the war as a soldier; so again we reach the point of this case which (although much else has been said) simply is: who is to decide?
If the courts can examine these questions, if every discharged clerk can by an appeal to the judiciary possibly override his chief and be reinstated in an office for which his chief deems him incompetent, the discipline of the Departments is seriously impaired. In Chisholm's Case (27 C. C., p. 98) this court held “upon such questions as these the executive officers can alone decide; they are questions of discretion which in their nature belong to those having the responsibility.” The officers of the G-overnment are carefully selected; thehea&s of theprinci- *187 pal Executive Departments and of the important bureaus are trained men of broad experience and national reputation; to spare them certain pressure and responsibility and in an effort to improve the subordinate civil service the statutes nowunder consideration were passed; but these statutes relate only to selection for appointment, and do not touch the power of removal except that (other things being equal) the soldier shall be retained.
The superior executive officer decides as to the removal. The law controlling him is the unwritten law of fairness, justice, kindness, and honesty, and also the written law providing (other things being equal) that the soldier shall be preferred. The supervision of this purely executive power is not intrusted to the judicial branch of the Government of the United States.
Petition dismissed.
Weldon, J., concurs in the judgment pro forma in order that the case may be decided by the Supreme Court.
Howry, J., took no part in the decision of this case.