IIowky, J.,
delivered the opinion of the court:
By an act making appropriations for the support of the Army for the fiscal year ending June 30, 1898, approved March 2, 1897 (29 Stat. L., 609), an appropriation was made for a gross sum for the transportation of the Army and its supplies. Among the items included in the appropriation was an amount for “ the expenses of sailing public transports on the various rivers, the Gulf of Mexico, and the Atlantic and Pacific oceans.” Subsequent annual appropriation acts for the support of the Army contained similar *64 provisions, and it was under the authority of these acts that plaintiff was appointed a pilot -in this service on April 12, 1891, at a salary of $1,200 per annum. In June, 1900, by Executive order,- he was brought into the classified service. When classified and sworn into the public service plaintiff filled up a personal record card, which was sent to the Quartermaster-General. The appointment was made by authority of the Acting Secretary of War under section 15 of civil service nile 8 and made permanently effective as of June 1, 1900, as set forth in finding xi.
He performed the duties pertaining to his appointment until March 4, 1901, when he was suspended from duty, Avithout pay, ’on the order of a quartermaster, for alleged dereliction of duty Avhile in charge of the steamer General Thayer. Given three days in which to submit written defense, the charges were investigated by the Secretary of War, aaúlo, on May 23, 1901, decided that the charges Avere not sustained, and directed that plaintiff be notified that he would be restored to duty when his services Avere required, but that in the meantime he Avould be considered as being on furlough, Avithout pay, from March 4, 1901, to the date of his suspension from duty under the charges of the quartermaster. Another person Avas within a few days after this order appointed temporary pilot and assigned to the same duty theretofore performed by plaintiff.
After the charges against plaintiff had been investigated and disposed of the Quartermaster-General on June 7, 1901, informed plaintiff that Avhen his services Avere required on any of the Government vessels he would be notified, but that in the meantime he would be considered on furlough Avithout pay from the day he ceased to perform duty under the original order of suspension. The Secretary of War presumably instructed this order of the Quartermaster-General, for Avhen plaintiff claimed his pay the Secretary under date of August 3, 1901, refused the same, stating that quite apart from the question of discharge from the serAÚce upon charges the Department had the right to furlough Avithout pay any of.its employees. Subsequent to this (March 6, 1902) the Civil SerAÚce Commission undertook to indicate the practice *65 in other branches of the War Department by showing that a party there might be furloughed when work was suspended or a reduction of the force became expedient because of the exhaustion of funds, and that the. granting of a furlough without pay was considered equivalent to the unqualified recommendation of the furloughed employee' for work of the same grade in any other department or office to which the classification applied. It was declared by the Commission that the furloughing of an employee, as illustrated in the case, of plaintiff, defeated the intent of the provisions of the ■rules regarding removals. Allusions to the views of the Civil Service Commission have more relation to the restoration to duty of plaintiff than to the 'natter now before the court and are not material, except to state that the Commission did make it plain that the appropriations were sufficient to pay pilots for duties similar to those performed by plaintiff.
The action'is for salary from the 2)eriod of suspension to the time of the reassignment to duty.
It is unnecssary to stop to consider the formalities of plaintiff’s entry into the public service to determine whether tuider section 3744, Devised Statutes, known as the act of 1882, plaintiff should have signed a formal written contract of service. That question is not in this case probably for more reasons than one. It is enough to say on this point that the Government could not accept the original service shown ivithout objection and then deprive plaintiff of his time by refusing to him his pay. Liability to pay arose as upon an implied contract when the defendants took plaintiff into their employment, and this liability continued until proper authority discontinued his services. In Clark v. United States (95 U. S., 539) the court held that recovery as for a Y/uavtvvh meruit would follotv, although there be no count in the petition as upon an implied contract. Here the contract of service for a time Avas executed and there ivas readiness to perform on one side, and under the authority cited plaintiff is. entitled to recover regardless of the form and manner of his entry into the service, if he has 'otherwise made out his case. ^
*66 The finding's make two conditions in law. The first arises between plaintiff’s suspension from duty by the quartermaster and the time when upon investigation the charges were found to be groundless, and the second arises after the acquittal of plaintiff upon the charges on the order of suspension then given by the Secretary of War to the time when he was restored to duty. Different .rights and obligations arise from these- differences in the conditions.
In United States v. Murray (100 U. S. R., 536) it was held by the Supreme Court that there was nothing to prevent the Secretary of the Treasury from putting an employee on furlough without pay at any time where the exigencies of the service required it; that if an employee might be dismissed absolutely it was difficult to see why such employee might not be furloughed without pay, that being in effect a partial dismissal. Applying this rule as if no exigencies of the service required action (a rule based upon the theory that the Government does not contract to keep its employees in the service) because of the right of the appointing power to dismiss at discretion, with no general supervising power in the courts to review the exercise of executive authority as declared in Keim v. United States (33 C. Cls. R., 174; 177 U. S. R., 290), it must be held that the plaintiff can not recover from the time the Secretary of War furloughed without pay to the time the employee was restored to duty. But the order of the Secretary of War was not retroactive. It did not affect plaintiff’s right to recover during the period of his suspension on the order of a mere subordinate. The army quartermaster could neither dismiss from the service nor suspend without compensation for alleged dereliction of duty.
In Lellmann's case (37 C. Cls. R., 135) we have said: “ It is not necessary to cite authorities to establish the proposition that where a person is unjustly suspended in the exercise of official duty, and the power having jurisdiction of him as an employee annuls such suspension, that the party is entitled to whatever emoluments there might be clue him during the time of such suspension.” The acquittal of this plaintiff to all intents and purposes annulled the suspension *67 for tlie time he ivas unjustly laid off by the summary order of the person having no right to make such an order. It is going quite far enough to say that the power having jurisdiction over him could dispense Avitli his services at will, but this court has never recognized the right of one subordinate to order another subordinate out of the public employment either by summary dismissal or its equivalent, stated in the form of a furlough Avithout pay, unless sanctioned by the head of the Department or other superior officer invested with power to appoint and dismiss.
. The injustice of permitting every employee to be so controlled by some other employee or official higher up in the scale of public employment is too apparent to need discussion.
Judgment will be entered for plaintiff in the sum of $266.67, being for the time covered from the date of plaintiff’s suspension from duty by the order of the quartermaster, March 4, 1901, to the time the Secretary of War took action in the premises, May 23, 1901, directing furlough Avithout pay, as that order is made by the court to relate to future pay-