Atkinson, J.,
delivered the opinion of the court:
The claimant, William IT. Faust, entered the service of the United States Navy as a naval cadet September 28, 1882, and has remained continuously in the service since that date. July 1, 1888, he ivas commissioned ensign; was promoted lieutenant (junior grade) November 10, 1896; was made a lieutenant March 3,1899. September 23,1899, he was placed on the retired list of the Navy in conformity with the provisions of section 1453 of the Revised Statutes. While on the retired list he was ordered to report for active duty on shore July 1, 1902, and in conformity with such order he reported for active duty, and was placed in charge of the branch hydrographic office at Buffalo, N. Y., where he continued to perform his official duties from said date to January 1, 1906.
He brings this suit to recover the pay of a lieutenant in the Navy after twenty years’ service, at the rate of $2,142 a year, on the army basis of pay, from September 28, 1902, to March 3, 1904, under the provisions of the act of March 3, 1899 (30 Stat. L., 1007), and also the act of June 7, 1900 (31 Stat. L., 684), and sections 1261, 1262, and 1263, Revised Statutes. Fie claims that there is due to him the rate of pay of a lieutenant in the Navy after five years from the date of commission, which is $2,200 a year, on the old navy pay basis, from March 3, 1904, to December 31, 1905, in conformity with the said acts of March 3,1899, and June 7,1900, and section 1556 of the Revised Statutes.
The single question to be determined by the court in this case is whether a retired officer of the Navy ordered to active duty is entitled to the benefit of longevity increase accruing after the date of his retirement.
The Auditor for the Navy Department refused to recognize the demand of claimant for longevity pay under the act of June 7,1900, supra, for the reason that a retired naval officer placed on active duty under said act is not entitled, in computing his pay, to be credited with any time subsequent to *97 the date of his retirement. The case was appealed to the Comptroller of the Treasury, and was by him affirmed.
Said act of June 7,1900, supra, provides in part as follows:
“ During a period of twelve years from the passage of this act any naval officer on the retired list may, in the discretion of the Secretary of the Navy, be ordered to such duty as he may.be able to perform at sea or on shore, and while so employed shall receive the pay and allowances of an officer of the active list of the grade from which he was retired.”
The contention of claimant’s counsel is that the Navy Department for more than forty years, and until 1905, has recognized retired naval officers as entitled to the same pay and allowances while assigned to duty at sea or on shore that they would have received had they not been retired, and he cites a number of cases in support of his contention. These cases, however, as we construe them, do not conflict with the conclusion we have reached in the case at bar. Nor can it properly be pleaded that payment of this class of claims by the Auditor for the Navy Department for a period of five years after the passage of the act now in question justifies, in any respect, a continuance of that practice.
In the case of Thornley v. United States (18 C. Cls. R., 111) the question of longevity pay, under the laws then existing, was fully discussed. The court then held that—
“The officers of the Navy are divided into two classes— those on the active list, who perform all the duties, bear all the responsibilities, and suffer all the privations attendant on the naval service, at sea or on shore, at home or abroad, in peace or in war, and therefore have higher pay and greater privileges; and those on the retired list, who have no responsibilities, can have no duties assigned them except in time of war, and have no privations except enforced inaction and reduced pay. Among the privileges of the former is this longevity pay. From the formation of the Navy till 1835 it had no existence, and was then authorized only as to surgeons. (4 Stat. L., 755, ch. 27.)
“ Down to 1860 it was not allowed to other officers. Men grew old as lieutenants, with no increase of pay from the day they became such till they reached the period of promotion to a higher grade. In that year the longevity pay was extended to captains, commanders, lieutenants, engineers, boatswains, gunners, carpenters, and sailmakers (12 Stat. L., 23, *98 ch. 67), and in 1870 to all grades of officers on the active list except midshipmen (16 Stat. L., 321, cb. 295), and so it remains to this day.
“ There was, no doubt, an underlying principle and purpose in the introduction of longevity pay into the Navy. We think it was intended, first, to induce men to enter the Navy and remain in it for life; second, to remove the depressing influence of long periods of service in one grade without an increase of pay; third, to compensate for increased professional knowledge and efficiency in officers by increasing their pay in advance of promotion. If these views are correct, the whole basis of longevity pay is the officer’s capacity for duty and his performance of it. In other words, longevity pay is for longevity in actual service. Upon these grounds alone we should consider that longevity pay ought to be confined to officers on the active list. But it is, in fact, so confined by the very terms of the statute. When it is,- in words, given to officers on that list, it is a clear case for the application of the familiar maxim expressio unius est exclusio alte-rius; and we have no right to resort to presumptions or constructions to extend its benefits to another class of officers, who, whether justly or not, have been withdrawn from the active and placed on the retired list, and forbidden to be employed on any duty in time of peace. To increase their pay every five years would involve the incongruity of creating a longevity pajr for longevity in doing nothing. In our opinion there is no foundation for the claim that retired officers in the Navy are entitled to longevity pay.”
This case was appealed to the Supreme Court, arid was affirmed (113 U. S. R., 310). See also Rutherford v. United States (18 C. Cls. R., 339) ; McClure v. United States (Ibid., 347), and Rojet v. United States (24 C. Cls.R., 155; 148 U. S. R., 167).
The case at bar falls within the act of June 7, 1900, supra, wherein it is provided that a retired officer of the Navy assigned to special duty “while so employed shall receive the pay and allowances of an officer of the active list of the grade from which he toas retired.” The contention of claimant for longevity pay, after he had been retired from active duty, by reason of having again been ordered to temporary active duty, is in conflict with the provisions of this statute, because it was evidently the intention of the Congress to grant such additional pay only to the officers on the active list. We can not believe that the purpose of the act was to *99 place retired officers ordered to temporary active duty in all respects on an equality of pay with those in the active line of the Navy. We can see no valid reason why an officer who has been retired should be regarded as growing old in the service. Longevity pay was intended to apply to such officers as remained in the service, and presumably by a faithful discharge of their duties were entitled to such increase of pay. There is, therefore, no apparent reason for giving a retired officer a higher rate of fay than he was receiving at the time he was retired. That is to say, when on a'ctive duty he should be entitled to the same pay he was receiving at the time of retirement, and nothing more. Any other construction, we think, would be unjust to the officers in active duty in the regular line, and would, therefore, result in serious detriment to the naval service.
The petition is dismissed.