Campbell, Ghief Justice,
delivered the opinion of the court.
The plaintiff was employed at the United States Mint at Philadelphia in the capacity of “helper” at the compensation of $3 per day and had held that position for several years. *260 On or about May 1,1911, he received a personal injury while in the discharge of his duties which was caused by no fault of his and which resulted in his being absent from work for several months. On or about November 5 he went to the mint and requested the superintendent to assign him to some lighter work than he was doing when he sustained said injury. The petition avers:
“At the suggestion of the superintendent he filed an application. Later he was examined by Dr. John Eomig, acting under the direction of the Secretary of Commerce and Labor. After this examination the petitioner was notified by the Department of Commerce and Labor to visit the mint and collect his pay, and to visit the mint thereafter every two weeks and receive his pay for the balance of the year or until such times as he was assigned to work by the superintendent.”
On July 1,1912, he was discharged from the service by the superintendent and was furnished with what is designated as a “Furlough and rating card” signed by the superintendent as follows:
“This is to certify that Patrick J. Costello, employed in this mint as helper, has this day been discharged from the service, and in accordance with section 2, rule 3, Civil Service Eegulations, governing appointments, etc., in mints_ and assay offices, approved February 28, 1908, his rating is as follows:
Workmanship, good; conduct, excellent.
(Sgd) John H. Landis,

Bupermtendent.'”

He sues for the amount, claimed to be due him as compensation from July 1, 1912, the date of his discharge, to October 1, 1913, when he was again appointed by the Secretary of the Treasury, amounting to $1,350.
The case comes before us upon a demurrer to the amended petition. While it is not averred specifically in the petition we may assume that the action of the Department of Commerce and Labor in notifying plaintiff to visit the mint and “receive his pay for the balance of the year” was taken in conformity to the act of May 30, 1908, granting certain employees of the United States the right to receive compensation for injuries sustained in the course of their employment. 35 Stats., 556. As' he makes no claim for any pay prior to *261 July 1,1912, it may also be assumed that he “received his pay for the balance of the year,” which ended June 30, 1912.
It is contended by plaintiff that his said discharge was wrongful and was made without lawful authority in the superintendent. The demurrer challenges the cause of action upon the ground that where the tenure of office is not" fixed or limited by statute, the officer holds at the will of the appointing power, and that the power to remove is incident to the power to appoint. Keim v. United States, 33 C. Cls., 174, affirmed 177 U. S., 290; Stilling case, 41 C. Cls., 61, 66.
Admitting the rule announced in said cases the plaintiff contends that his removal or discharge by the superintendent was unauthorized because, as he contends, that officer was not vested with the power of appointment and consequently had not a power of discharge. He relies upon a number of cases in which the principle is stated that where an officer is wrongfully suspended by one having no authority to do so he is entitled to the compensation provided by law during the period of suspension. He cites Lellman case, 37 C. Cls., 128; Corcoran case, 38 C. Cls., 341; Stilling case, 41 C. Cls., 61; Buehring case, 45 C. Cls., 404; Wickersham case, 201 U. S., 390. The last-named case does not qualify the ruling in Keim’s case, supra, but involved a question of suspension. The court said (p. 399) :
“ Whether he could have been summarily removed or suspended by the President or other competent authority is not the question now before the court, but the question is whether the employee during his wrongful suspension by a subordinate officer is entitled to the compensation provided by law.”
It must be regarded as settled that where the authority vested by law with the power of appointment removes an employee whose term of office is not for a fixed period, and this right to remove him is not forbidden by the Constitution or statute, the court will not review the causes of the removal and will be bound by the action of the appointing power in the premises. Keim case, supra; Howard case, 22 C. Cls., 305; Collins case, 48 C. Cls., 525; Farr case, 49 C. Cls., 699; Murray case, 100 U. S., 536. In such case it is a sound and necessary rule to consider the power of removal as incident to the power of appointment. Shurtleff case, 189 U. S., *262 311, 316; Reagan case, 182 U. S., 419, 427; Howard case, 22 C. Cls., 305.
The question, therefore, is whether the superintendent of the mint at Philadelphia had the power to remove the plaintiff, and the answer to the question depends upon whether the superintendent was vested with the authority of appointment of plaintiff.
The “ Coinage act of eighteen hundred and seventy-three,” 17 Stats., 424, designated in section 66 of that act the different mints and assay offices, among them “the Mint of the United States at Philadelphia.” Some additions may have been made since. The act provides (sec. 1) that “ the Mint of the United States is hereby established as a bureau of the Treasury Department,” and that the chief officer of the said bureau shall be denominated the Director of the Mint. He is given general supervision of all mints and assay offices.
By section 3 of said act (B. S., sec. 3496) it is provided:
“ Sec. 3. That the officers of each mint shall be a superintendent, an assayer, a melter and refiner, and a coiner, and for the mint at Philadelphia an engraver, all to be appointed by the President of the United States, by and with the advice and consent of the Senate.”
By section 4 it is provided that the superintendent of each mint shall have the control thereof, the superintendence of the officers and persons employed therein, and the supervision of the business thereof, subject to the approval of the Director of the Mint, to whom he is required to report at such times and according to such forms as the Director of the Mint may prescribe, with particular reference to certain matters mentioned in the section. It is also provided in said section 4 that the superintendent “ shall also appoint all assistants, clerks (one of whom shall be designated ‘chief clerk’), and workman employed under his superintendence; but no person shall be appointed to employment in the offices of the assayer, melter and refiner, coiner, or engraver except upon the recommendation and nomination in writing of those officers, respectively; and he shall forthwith report to the Director of the Mint the names of all persons appointed by him, the duties to be performed, the.rate of compensation, the appropriation from which compensation is to be made, *263 and the grounds of the appointment, and if the Director of the Mint shall disapprove the same, the appointment shall be vacated.” The plaintiff did not occupy the position of either assayer, melter and refiner, coiner, or engraver, all of which offices were to be appointed by the President (sec. 3), but comes within the class of “ workman.” Section 10 of said act provides for an oath of office by “ every officer, assistant, and clerk of the mint,” and that the superintendent may require such oath “from any of the employees of the mint.”
Section 11 provides for bonds by certain officers and that “ similar bonds may be required of the assistants and clerks in such sums as the superintendent shall determine, with the approbation of the Director of the Mint.”
Section 12 of the act fixes salaries of certain officers and provides that the assistants and clerks shall receive such annual salaries as the Director of the Mint may determine, with the approbation of the Secretary of the Treasury, and that “to the workmen shall be allowed such wages, to be determined by the superintendent, as may be customary and reasonable according to their respective stations and occupations and approved by the Director of the Mint.” The salaries and “the wages of the workmen permanently engaged ” are made payable in monthly installments.
The statute, therefore, provides for one director of all the mints, with office at Washington, and a superintendent of each mint who had the control thereof and superintendence of the officers and persons employed therein. He has the authority to appoint “ workmen employed under his superintendence ” and to determine their compensation, with the qualification that the compensation so determined shall be approved by the director, and his appointments are required to be reported to the director, and if the latter “ disapprove the same the appointment shall be vacated.”
It is plainly apparent that the power of appointment of workmen is vested in the superintendent of the mint. While their compensation as determined by the superintendent required the approval of the director, his appointments are valid unless disapproved by the director. The provision that the appointment shall be “ vacated ” if disapproved by *264 the director implies that it shall stand and be a valid appointment unless the director affirmatively indicates a disapproval. If he does disapprove, “the appointment shall be vacated.” It does not appear in the instant case that the director took any action relative to plaintiff’s appointment, except inferentially that he never disapproved it. The statute is silent as regards the power to remove a workman appointed by the superintendent, and under the decisions above cited that power is incident to the authority to appoint. The removal of the plaintiff was within the authority of the superintendent under said act. It is suggested by plaintiff that the right of appointment by the superintendent was a qualified right because it was subject to the director’s disapproval. The reasons for vesting authority in the superintendent of the mint, who is upon the ground and knows the conditions, to appoint workmen without awaiting the approval of the director, whose office is in Washington, are apparent. The latter’s right to disapprove, and thereby to cause the appointment to be vacated, secures the general supervision which the act contemplates he shall have.
We are referred to a provision in the “ act making appropriations for the legislative, executive, and judicial expenses of the Government for the fiscal year ending June 30, 1913, and for other purposes,” 37 Stat., 360, 384, wherein it is provided that assistants and employees at the mints shall from and after July 1, 1912, be appointed by the Secretary of the Treasury. That act was approved August 23, 1912, some seven weeks after the date mentioned therein “from and after” which the right of appointment was vested in the Secretary. This provision for appointment is a matter of general legislation appearing in an appropriation bill which had been introduced in the House prior to July 1, 1912, and three joint resolutions had been passed extending the appropriations for the preceding year pending the enactment of said appropriation bill. These joint resolutions were passed July 1, August 1, and August 15,1912, respectively, 37 Stat., 638, 640, 642. Said provision has for its purpose the abolishment of the position of coiner and that of melter and refiner at the several mints and assay offices as they existed under prior legislation, and the duties and responsibilities imposed *265 by law on the officers holding said positions are by said provision devolved upon “the.superintendents of said institutions.” It is then provided that “all assistants and employees of the mints and assay offices of the United States shall from and after July 1, 1912, be appointed by the Secretary of the Treasury.” The said office of coiner and of melter and refiner are “ abolished to take effect on and after July 1, 1912,” and “on and after that date” the said duties and responsibilities are to devolve on the superintendents, as above stated.
Generally speaking, acts of Congress take effect from the date of their approval. United States v. Green, 138 U. S., 293, 296; Burgess v. Salmon, 97 U. S., 381, 383. But it was held with reference to pay of certain officers that Congress may direct that an act shall take effect as of a date prior to its approval, Burgess v. Salmon, supra. It is manifest that it was the intention that the said appropriation act should be effective for the fiscal year beginning July 1, 1912, and it is probable that the framers of the special provision under consideration contemplated that the appropriation bill would be enacted into law prior to July 1,1912, and hence inserted the dates found therein. But it is not to be presumed that Congress intended when the bill' was actually passed in August that officers charged with the responsible duties and the liabilities under existing law of coiners and melters and refiners were relieved of those duties and liabilities prior to the enactment of the law. They were bonded officers whose duties were prescribed by the coinage act. To shift their duties and liabilities required affirmative legislation. To devolve those duties upon the superintendents required a change in existing law. Can it be said that Congress intended to declare on August 23, 1912, when the bill became a law, that the said officers were not coiners or melters and refiners after July 1 of the same year and that the superintendents were charged with the duties and liabilities of those officers before there was a law relieving the one or charging the others with said duties and liabilities? Were the said important offices abolished before the law which undertook to abolish them was passed? We think not. It must be held that the lawful acts of the constituted officers of the mints done prior to the *266 act of August 23, 1912, were not interfered with by said act. It did not make invalid what was lawful prior to its enactment. The superintendent was authorized by law to appoint workmen and could therefore remove them on July 1, 1912. He having removed the plaintiff on that date, the latter ceased to be in the employ of the United States or to be entitled to the compensation for which he sues.
It is averred in the petition that the plaintiff was appointed by the Director of the Mint. We are disposed to treat this averment as a conclusion based upon plaintiff’s contention that the director was the appointing power and not as a statement of fact that the Director of the Mint actually made the appointment. To be entitled to the compensation sued for, the plaintiff must show a valid appointment to the office. Jackson case, 42 C. Cls., 39. We find no authority in the statute for an appointment of workmen by the director. He could disapprove an appointment made by the superintendent, who would then make another appointment. Under the law as it existed prior to said coinage act there was a Director of the Mint at Philadelphia, and section 65 of the coinage act and prior appropriation acts refer to him. Whether he is so referred to in the petition is left in doubt, as the statute created the office of superintendent. However that may be, the averment that plaintiff was appoined by the director does not afford him a right of action.
The petition should be dismissed, and it is so ordered.