UNITED STATES v. UNITED STATES FIDELITY & GUARANTY CO. et al.

(District Court, E. D. New York. July 26, 1917.)

1. ARMY AND NAVY ⊂⊃13(2)—NAVAL OFFICERS—STATUS FOR COMPUTING PAY—"APPOINTMENT FROM CIVIL LIFE."

   Under Act March 3, 1899, c. 413, § 13, 30 Stat. 1007 (Comp. St. 1916, § 2818), providing that "all officers, including warrant officers who have been or may be appointed to the navy from civil life shall, on the day of appointment, be credited, for computing their pay, with five years' service," which entitles the appointee to an increased rate of pay, an enlisted man who while in the service took the examination for a higher position, and having passed, and two days before his appointment, and when it was practically assured, obtained his discharge from the service, cannot be rated as an appointee from civil life in the sense of the statute, but his appointment must be considered as a promotion in the service.

2. ARMY AND NAVY ⊂⊃13(15)—NAVAL OFFICERS—STATUS FOR COMPUTING PAY.

   Where, however, such officer was rated as an appointee from civil life, which he was according to the strict letter of the law, for a number of years, and vouchers for the increased pay were approved, he is entitled to retain such pay up to the time when his rating was corrected.

At Law. Action by the United States against the United States Fidelity & Guaranty Company and Thomas D. Harris. Judgment for defendants.

Melville J. France, U. S. Atty., and Thomas J. Cuff, Asst. U. S. Atty., both of Brooklyn, N. Y.

George Hiram Mann, of New York City, for defendants.

CHATFIELD, District Judge. The United States has brought suit to recover the sum of $1,301.96 paid to the defendant Harris between January 1, 1905, and December 31, 1910, as a part of his salary as assistant paymaster during that period.

[1] It appears that Harris was an enlisted man in the United States navy, having served from May 10, 1898, until June 13, 1900, upon which day he received a discharge upon the express statement that his services were no longer required. It also appears that he had requested this discharge upon the day before, when he learned that he had been certified as qualified for appointment as assistant paymaster. He had upon March 1, 1900, been allowed to take the examination for assistant paymaster, there being two vacancies, and two applicants taking the examination, both of whom passed. Harris was appointed assistant paymaster upon June 15, 1900, took his oath upon the 22d day of June, and states in his testimony that he resigned because he "hoped," in the sense of expected, to be appointed a paymaster after his resignation had taken effect. The record also shows that at the time of so doing Act March 3, 1899, c. 413, § 13, 30 Stats. at Large, p. 1007 (Comp. St. 1916, § 2818), provided:

"That all officers, including warrant officers, who have been or may be appointed to the navy from civil life shall, on the day of appointment, be credited, for computing their pay, with five years' service."

By the statute in force at the time an increase of pay allowed for the third five years' service caused Harris to pay himself during the

five years from 1905 to 1910 at a rate which gives a total for these increases of payment during that time of $1,301.96. This amount is sought to be recovered in this action.

There is no dispute as to the facts, and Mr. Harris has been examined in open court. In his testimony he states that at the time of his appointment he was misinformed as to the pay regulations and supposed that he would receive what he calls "old navy pay," which would be slightly greater during the five years in question than either of the methods of payment which are under consideration. He seeks thereby to meet the question of intent which is presented by the government as a controlling issue.

The case of United States v. Alger, 151 U. S. 362, 14 Sup. Ct. 346, 38 L. Ed. 192, establishes the law when the facts passed upon in the Alger Case are present. This case holds that:

"A resignation the very day before an appointment to a higher office, and when such appointment must have been known of and counted upon, was evidently tendered with no intention of leaving the service, and was but equivalent to a resignation which the law would have implied from acceptance of the higher office."

Hence an intention to leave the service or an intention to merely move from one position to a higher is a finding of fact based upon a construction of the law. Mr. Harris has attempted to show that his intention in fact was not to resign as a subterfuge to obtain the benefits of greater pay from the method of appointment. But, as was pointed out in the Alger Case, and in United States v. Thornton, 160 U. S. 654, 16 Sup. Ct. 415, 40 L. Ed. 570, the honesty of purpose and righteousness of receiving the increased amount of pay is not the test as to the effect of such a resignation. The Alger Case establishes the proposition that a resignation which, to the knowledge of the person resigning, is for the purpose of obtaining the higher appointment, is no different in effect than if simultaneous therewith, and if expressly stated to be for the purpose of receiving that appointment. Such promotion cannot be, as a matter of law, used for the establishment of facts indicating a different condition of relations than those which evidently existed.

In the present case Harris applied for appointment while he was an enlisted man, took the examination for the appointment as a promotion, and sent in his resignation with the expectation of being appointed as a promotion unless he should fail of appointment. The mere extent of opportunity within which something might occur to cause failure of appointment, where the appointment was practically certain, would not affect the status of the individual who, while in the service, submits his application to the government for promotion. This was the ruling which resulted in the case of the present defendant, Harris, when the question of his status was first raised.

The Comptroller of the Treasury on January 29, 1910, decided that Harris could not hold a position as an appointee from civil life, in the sense meant by the statute. The matter was then taken by Harris to the Court of Claims, with reference to the salary from June 30, 1910, on, but was not prosecuted, and Harris has since acquiesced in the

rating established in accordance with the decision of the Comptroller of the Treasury.

It must be held that an appointment such as that given Mr. Harris should not be rated as one from civil life. The statute which provides for this increase of pay, and which evidently had in mind such treatment of the enlisted men in the navy, and also of those appointed from civil•life, as to make their opportunities equal, shows that Congress took into account the actual promotion of a man in the service, and the actual appointment of a man who had not been in the service, in establishing the rates of increase in pay.

[2] But a determination that Harris should not be classified as appointed from civil life does not establish the right of the government to receive back the money which was paid him before such classification was made. During the years from 1905 to 1910 he had been paid the increased amount upon vouchers which were approved and were made out for him as an appointee from civil life. He had in all matters which legally established his status, received what was stated to be an appointment as a civilian, and until the form of his appointment was changed by a correction of his rating there was no wrongdoing in receiving pay according to the status approved by those responsible for the appointment. The mistake of law was not on the part of Mr. Harris.

Harris was in fact appointed from civil life, according to the letter of the law, but under such circumstances that the government had the right to compel him to accept the appointment as a promotion. The government did not compel him to accept the appointment in that form until 1910, and the suit to recover the amount paid him before that date should not prevail.

The defendants may have judgment.