## EMBRY *v.* UNITED STATES.

April 20, 1867, the President duly commissioned A. as deputy postmaster at Nashville, Tenn., for the term of four years, "subject to the conditions pre-scribed by law," and May 5, 1869, under the act of April 5, 1869 (16 Stat. 6), signed an order suspending him from office until the end of the next session of the Senate, and designating B. to perform the duties of that office. A. delivered the office to B. May 27, 1869. The nomination of B. was sent to the Senate at its next session, which terminated July 15, 1870, and on that date it was rejected. Pursuant to instructions from the Post-office Depart-ment, A. took possession of said office July 25, 1870. B., when holding the office, received the salary. A. brought suit therefor against the United States. *Held,* that he was not entitled to recover.

APPEAL from the Court of Claims.

This was a suit in the court below by Bowling Embry to recover $4,644.75 as the amount of salary claimed to be due him as deputy postmaster at Nashville, Tenn., from May 27, 1869, to July 25, 1870.

The court found the following facts : —

1. On the 20th of April, 1867, the claimant was appointed by the President of the United States, by and with the advice and consent of the Senate, deputy postmaster at Nashville, in the State of Tennessee, for the term of four years from that day, and the commission issued to him was in the following words : —

"ANDREW JOHNSON, President of the United States of America, to all who shall see these presents, greeting :

"Know ye, that, reposing special trust and confidence in the integrity, ability, and punctuality of Bowling Embry, I have nominated, and, by and with the advice and consent of the Senate, do appoint him deputy postmaster at Nashville, in the State of Tennessee, and do authorize and empower him to execute and fulfil the duties of that office according to law; and to have and to hold the said office, with all the powers, privileges, and emoluments to the same of right appertaining, unto him, the said Bowling Embry, for the term of four years from the day of the date hereof, subject to the conditions prescribed by law.

"In testimony whereof, I have caused these letters to be made patent and the seal of the United States to be hereunto affixed.

"Given under my hand, at the city of Washington, the twentieth day of April, in the year of our Lord one thousand eight hundred

and sixty-seven, and of the independence of the United States of America the ninety-first.

[L. S.]  "ANDREW JOHNSON.

"By the President:

"WILLIAM H. SEWARD, *Secretary of State.*"

2. Under this appointment the claimant entered upon the discharge of the duties of said office, and continued therein until the 27th of May, 1869, when, in consequence of an order made by the President of the United States, under the act of April 5, 1869, suspending him from said office, he delivered over said office to one Enos Hopkins, who had been designated by the President to perform the duties of deputy postmaster at Nashville, and the commission authorizing him to perform said duties was in the following words:—

"ULYSSES S. GRANT, President of the United States of America, to all who shall see these presents, greeting:

"Know ye, that by virtue of the authority conferred upon the President by the second section of the act of Congress, approved April 5, 1867, entitled 'An Act to amend an act regulating the tenure of certain civil offices,' I do hereby suspend Bowling Embry from the office of deputy postmaster at Nashville, in the State of Tennessee, until the end of the next session of the Senate; and I hereby designate Enos Hopkins to perform the duties of such suspended officer in the mean time, he being a suitable person therefor, subject to all provisions of law applicable thereto.

"In testimony whereof, I have caused these letters to be made patent, and the seal of the United States to be hereunto affixed.

"Given under my hand, at the city of Washington, the fifth day of May, in the year of our Lord one thousand eight hundred and sixty-nine, and of the independence of the United States of America the ninety-third.

[L. S.]  "U. S. GRANT.

"By the President:

"HAMILTON FISH, *Secretary of State.*"

3. On the 6th of December, 1869, the President nominated the said Hopkins to the Senate for appointment as deputy postmaster at Nashville, and on the 15th of July, 1870, the Senate resolved that it did not advise and consent to that appointment.

4. On the 21st of July, 1870, the following communication was addressed and sent by the First Assistant Postmaster-General to the claimant:—

"POST-OFFICE DEPARTMENT, APPOINTMENT OFFICE,
"WASHINGTON, D. C., July 21, 1870.

"SIR, — In the case of Enos Hopkins, rejected by the Senate of the United States, under date of July 15, 1876, he is, under the provisions of the act of March 2, 1867, and April 5, 1869, regulating the tenure of certain civil offices, inhibited from holding, exercising, or discharging any of the duties pertaining to the office of postmaster at Nashville, Tenn. You should take charge of said office at once under your unexpired commission, for the time being and until the case can be submitted to the Attorney-General. Upon taking charge of the office you will receipt to Mr. Hopkins (in duplicate) for all the public property in his possession, and report the date of your doing so to this office.

"Very respectfully, &c.,
"J. W. MARSHALL,
"*First Assistant Postmaster-General.*

"BOWLING EMBRY, Esq., Nashville, Tenn."

In pursuance of the authority of said communication, the claimant again took possession of said office on the 25th of July, 1870.

5. While the claimant was in possession of said office, prior and up to the 27th of May, 1869, he gave his personal attention to the business thereof to the entire satisfaction of the Post-office Department and of the people of Nashville, and punctually and promptly rendered to the Sixth Auditor of the Treasury his accounts of all moneys collected and disbursed by him during that period, and promptly paid over to the United States all balances due from him to them, and his account was satisfactorily settled and adjusted on the books of the said auditor's office.

6. During the whole period from May 27, 1866, to July 25, 1870, and afterward, the salary of said office was fixed by the Postmaster-General at the rate of $4,000 per annum; and the same amounted for that period to $4,645.47, which was paid to said Hopkins, and refused to the claimant, who applied to the Postmaster-General for payment of the same to him.

Upon the foregoing facts the court found as a conclusion of law that the claimant was not entitled to recover.

Judgment having been rendered for the United States, Embry appealed, and here assigns the following errors: —

The Court of Claims erred in holding as matter of law upon the facts found that the claimant was not entitled to the salary of the office during the time he was suspended.

The court erred in holding that the claimant was not entitled to the said salary from the end of the next session of the Senate, after his suspension, even if not entitled to it during the time he was suspended,

*Mr. Matt. H. Carpenter* and *Mr. J. H. Embry* for the appellant.

1. An act of Congress which provides that a suspended officer shall not receive the salary and emoluments of the office is unconstitutional.

The appointment gives the officer a legal right to the salary by law attached to the office, until he is removed, resigns, dies, or his term expires. *Marbury* v. *Madison,* 1 Cranch, 137.

The Constitution provides that the President shall nominate, and by and with the advice and consent of the Senate appoint, all officers of the United States. The power of removal is an incident to the power to appoint, and must be exercised by the President and Senate together. An act of Congress cannot vest the power of removal elsewhere. From this it follows that the claimant never was removed from the office, and, consequently, that he is entitled to the salary for the whole term.

2. Conceding the act of Congress in question to be constitutional, and that the claimant was not entitled to the salary during the period of his suspension, still, that period being fixed by the statute to expire on the termination of the next session of the Senate, it follows that from that day he was entitled to the salary. The judgment of the Court of Claims is erroneous to this extent, even should the act be held constitutional.

*The Attorney-General, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

By the tenure-of-office act, passed March 2, 1867 (14 Stat. 430), it was enacted that every person appointed to a civil office by and with the advice and consent of the Senate should hold his office until his successor should be in like manner appointed and duly qualified, except as therein otherwise provided; but the President was authorized during the recess

of the Senate to suspend an officer for misconduct, crime, or incapacity. In case of suspension, the President could designate some suitable person to perform temporarily the duties of the office until the matter should be acted on by the Senate when in session. If the Senate concurred in the suspension, and advised and consented to the removal, the President might remove and by and with the advice and consent of the Senate appoint another person to the office. If, however, the Senate refused to concur, the officer suspended might resume the functions of his office, but his salary and emoluments during the suspension went to the person who performed his duties, and not to him.

On the 20th of April, 1867, while this law was in force, Embry, the appellant, was, by and with the advice and consent of the Senate, appointed and commissioned postmaster at Nashville, Tenn., the salary being at the rate of $4,000 a year. By his commission he was to hold his office for four years, "subject to the conditions prescribed by law."

On the 5th of April, 1869, the original tenure-of-office act was amended, so as to authorize the President in the recess of the Senate to suspend an officer at his discretion until the end of the then next session of the Senate, and to designate some person to perform the duties of the office in the mean time, who should be entitled to the salary and emoluments while he served, instead of the officer suspended. 16 Stat. 6.

Under the authority of this act, Embry was suspended from office on the 5th of May, 1869, during a recess of the Senate, and Enos Hopkins designated to perform his duties. Embry, however, remained in the office until May 27. The Senate did not advise or consent to the appointment of any one to fill the place of Embry during its next session, which terminated July 15, 1870, and he was, on the 21st of July, notified to resume the charge of his office, which he did on the 25th of that month. The salary from May 27, 1869, to July 25, 1870, was paid to Hopkins. This suit was brought by Embry to recover for the same time. The Court of Claims decided against him, and he appealed.

We have had no difficulty in reaching the conclusion that the appellant is not entitled to recover. The important constitu-

tional question which has at times occupied the attention of the political department of the government ever since its organization, and which was brought to our attention in the argument, is not, as we think, involved. The question here presented is not one of office, but of salary. Wherever the power of removal from office may rest, all agree that Congress has full control of salaries, except those of the President and the judges of the courts of the United States. The amount fixed at any one time may be added to or taken from at will. No officer except the President or a judge of a court of the United States can claim a contract right to any particular amount of unearned compensation. If an officer is not satisfied with what the law gives him for his services, he may resign.

When Embry was appointed, the President had power to suspend him for cause. The law also provided that if suspended he should draw no salary so long as another person was performing his duties. While he was in office, further power of suspension was given the President, with a like provision as to pay. He was suspended. The Senate did not see fit to advise or consent to the appointment of another person in his place, and consequently, on the 15th of July, 1870, when the next session of the Senate ended, he became entitled to enter again on the performance of the duties which pertained to his office. This he did on the 27th of July, but not before. His present claim rests not on any contract with the government, either express or implied, but upon the acts of Congress which provide for his salary. We so held in *United States* v. *McLean*, 95 U. S. 750. To adjudge in his favor would be to make a new law, not to enforce an old one. Although he was lawfully in office, he was not entitled to pay or emolument while not performing its duties because of his suspension.

It is true his lawful suspension ended on the 15th of July, but he did not resume possession until ten days afterwards. In the mean time, the person designated for that purpose performed his duties. Under these circumstances, the law gave the salary to the actual incumbent and not to him. The delay was an incident to the suspension, and does not seem to have been unreasonable. No more time elapsed than was necessary to give the proper notices and transfer the possession.

*Judgment affirmed.*