Davis, J.,
delivered the opinion of the court:
The petition alleges that in the year 1883 claimant was appointed chief justice of the supreme court of the Territory of Arizona, and continued to hold that office until the 22d day of June, 1886, when he resigned. Prior thereto, however, and on the 9th day of November, 1885, he was suspended from the office by the President and another person was designated to perform its duties. Claimant demands here salary from the date of suspension to the date of resignation, urging that he did not hold office at the pleasure of the President, and denying that the suspension was valid.
The questions presented are thus stated by the claimant:
“ 1. Can the President at pleasure remove judges of the supreme courts of the Territories ?
u 2. If he may, does the statute empower him to suspend them.
u 3. In case he may suspend them, are they not at all events entitled to receive the regular official salary until they die, resign, are removed, or their term expires.”
The Constitution (Article III, § 1) provides that—
“ The judicial power of the United States shall be vested in one Supreme Court and in such inferior courts as Congress may from time to time ordain and establish. The judges, both of *312 the supreme and inferior courts, shall hold their offices during good behavior, and shall, at stated times, receive for their services a compensation which shall not be diminished during their continuance in office.”
Congress has provided for supreme courts in the Territories, consisting each of a chief justice and two associate justices, who “ hold their offices for four years and until their successors are appointed and qualified” (Eev. Stat., § 1861). These courts have chancery as well as common-law jurisdiction (id., § 1868); the judges’ salaries are to be paid at the Treasury of the United States (id., § 1882); the Constitution and laws of the United States when not locally inapplicable have the same force and effect in the Territories as a elsewhere in the United States ” (id., § 1891); there is an appeal from the Territorial courts to the Supreme Court of the United States (id., §§ 702 and.1909).
It is contended that these courts are inferior courts of the United States, and while necessarily temporary in their nature, as a Territorial government is temporary and but a step in the formation of a State, and while, therefore, the justices’ commissions run for a specified and limited term, still during that term they hold, not at the will of the President, but under the provision of the Constitution as to United States courts, and therefore “ during- good behavior.”
The able argument on behalf of the claimant, dealing with the principles upon which the Constituti on was founded, and with the relations in a free country of the judiciary to the executive, we should be glad to discuss were the question presented in our opinion a novel one. But we find the legal status of Territorial courts to have been so fully considered in the Supreme Court, whose decisions are final here, that we do not feel authorized to do more than to examine the opinions of that tribunal for the purpose of discovering the result which it has reached.
The earliest case is that of the American Insurance Company v. Canter (1 Peters, 511), in which Chief-Justice Marshall delivered the opinion, holding that admiralty cases are not cases arising "under the Constitution and laws of the United States” within the meaning of the act organizing the Territory of Florida (3 Stat. L., 752), and that a Territorial court held by judges whose appointments are for four years cannot be the depository of any part of the judicial power conferred by the Constitution on the General Government.
*313 The Chief Justice said :
“The next sentence [of the Constitution] declares that 1 the judges, both of the supreme and inferior courts, shall hold their offices during good behavior.’ The judges of the superior courts of Florida hold their offices for four years. These courts, then, are not constitutional courts in which the judicial power conferred by the Constitution on the General Government can be deposited. They are incapable of receiving it. They are legislative courts, created in virtue of the general right of sovereignty which exists in the Government, or in virtue of that clause which enables Congress to make all needful rules and regulations respecting the territory belonging to the United States. The jurisdiction with which they are invested is not a part of that judicial power which is defined in the third article of the Constitution, but is conferred by Congress in the execution of those general powers which that body possesses over the Territories of the United States.”
The court afterwards, in the case of the City of Panama (101 U. S. R., 453), commented favorably on this case of the insurance company against Canter. In delivering the opinion Mr. Justice Clifford said that “select passages of the opinion in that case when detached from the context, may appear to support the theory of the respondents, but the actual decision is explicitly and undeniably the other way.” The claimant urges that the reasoning in the case and this statement in the opinion tends to disparage the decisions in the Canter case. The two cases came up under a very different condition of the law. The organic act ruling the earlier decision provided “ that the judicial power shall be vested in two superior courts, and in such inferior courts and justices of the peace as the legislative council of the Territory may from time to time establish,” and to the superior courts was given “ the same jurisdiction within its limits in all cases arising under the laws and Constitution of the United States which,” by the Acts 24th September, 1789 (1 Stat. L., 73), and of 2d March, 1793, (id., 333), “was vested in the court of Kentucky district,” while the powers of the Territorial legislature were extended to all rightful objects of legislation, provided their laws be not “inconsistent with the laws and Constitution of the United States.” Under this state of the law the Supreme Court held that the legislature might vest admiralty jurisdiction in an inferior court created by local statute.
The later case was heard on appeal from Washington Terri-ory, whose organic act vested in its district courts the same *314 jurisdiction in all cases arising under the Constitution and laws of the United States as is vested in the Circuit and District Courts of the United States, and it was held that under this act the local district courts had admiralty jurisdiction, the court saying:
“Jurisdiction of the Territorial supreme court cannot be successfully denied if it be established that the original jurisdiction of the cause was vested in the district court [of the Territory] * * * from which it follows that the present investigation is necessarily limited to the inquiry whether the district court had jurisdiction to hear and determine the controversy. (101 U. S. R., 455, 456.) * * * Cognizance of an original character was given to the District Courts [of the United States] concurrent with the Circuit Courts * * * long prior to the organic act in question of all crimes and offenses against the authority of the United States, the punishment of which is not capital, whether committed in their respective districts or upon the high seas and the [Federal] District Courts having admiralty jurisdiction ; beyond all question admiralty jurisdiction, including jurisdiction in prize cases, was vested in the Territorial district courts by the ninth section of the organic act $ the explicit language of the act being that the district court of the Territory shall have and exercise the same jurisdiction in all cases arising under the Constitution and laws of the United States as is vested in the circuit and district courts of the United States, and also of all cases arising under the laws of he Territory.” (Id., 458.)
The result of the two cases is that in the one the court held that under the organic act of Florida admiralty jurisdiction was vested in an inferior court created by the legislature; in the other, that under the organic act of Washington Territory admiralty jurisdiction was vested in the Territorial district court created by the Congress. There is no conflict between the cases, and in so far as the earlier ease is of direct importance to that now under consideration its reasoning is affirmed in the following language:
‘‘ It is competent for Con gress to make provision for the exercise of admiralty jurisdiction, either within or outside of the States; and in organizing Territories Congress may establish tribunals for the exercise of such jurisdiction, or they may leave it to the legislature of the Territory to create such tribunals. Courts of the kind, whether created by an act of Congress or a Territorial statute, are not, in strictness, courts of the United States; or, in other words, the jurisdiction with which they are invested is not a part of the judicial power defined by the third article of the Constitution, but is conferred by Congress in the *315 execution of the general power which the legislative department possesses to make ail needful rules and regulations respecting'the public territory and other public property. (Id., 460.)
The Supreme Court has spoken with no uncertain note as to thestatus of Territorial courts. Following in the path marked out in Canter’s Case, Mr. Justice Nelson said, delivering the opinion in the case of Benner v. Porter (9 How., 235) which was an appeal from Florida:
“The distinction between the Federal and State jurisdictions, under the Constitution of the United States, has no foundation in these Territorial governments ; and consequently no distinction exists either in respect to the jurisdiction of their courts or the subjects submitted to their cognizance. They are legislative governments, and their courts legislative courts; Congress in the exercise of its powers in the organization and government of the Territories, combining the powers of both the Federal and State authorities. There is but one system of government or of laws operating within their limits, as neither is subject to the constitutional provisions in respect to State and Federal jurisdiction. They are not organized under the Constitution, nor subject to its complex distribution of the powers of Government, as the organic law; but are the creations exclusively of the legislative department, and subject to its supervision and control.” (See also Clinton v. Englebrecht, 13 Wall., 434; Hornbuclde v. Toombs, 18 Wall., 648.)
In Good v. Martin, brought up by writ of error to the Supreme Court of the Territory of Colorado, it was assigned as error that two of the defendants had not been permitted to testify on the ground of interest, and counsel relied upon the Act July 2, 1864, (13 Stat. L., 351), which declares that in the courts of the United States no witness shall be excluded in any civil action because he is a party to or interested in the issue tried. To this contention the court answered:
"Territorial courts are not courts of the United States within the meaning of the Constitution, as appears by all the authorities. A witness in civil cases cannot be excluded in the courts of the United States because he or she is a party to, or interested in, the issue tried; but the provision has no application in the courts of a Territory where a different rule prevails.” (95 U. S. R., 98; also see Reynolds v. The U. S., 98 Wall., 154.)
Turning to the position taken by the Executive as to the status of these Territorial courts, we find Attorney-General Grundy, as far back as 1839, advising the President that Terri *316 torial judges areuotjudges under the Constitution, “but are mere creatures of legislation; therefore are not civil officers of the United States,” and therefore are “ not subject to trial and impeachment before the Senate of the United States.” (3 Op., 409.) Twelve years later Attorney-General Crittenden informed the' President, in answer to the inquiry whether the latter had “the rightful power” to remove the Chief Justice of Minnesota, that he had this power of removal “ for any cause that may, in your judgment, require it.” (5 Op., 288.)
The law, in our opinion, is settled that a Territorial court is not a court of the United States in the sense of the Constitution, but,- with its judges, is a creation of Congress, subject to the will of that body exercised under the power given it to “make all needful rules and regulations respecting the territory or other property of the United States. (Constitution, Art. IV, sec. 3.)
These judges, being then officers not covered by the clause fixing the tenure of the United States judges “during good behavior,” are subject to the same incidents as to removal or suspension as are other civil officers appointed by the President after confirmation by the Senate.
The power to appoint includes the power to remove or suspend unless some other provision of law binding upon the Executive interferes with its free exercise, and it has been the unvarying practice of all Presidents to remove from office a civil officer when in their opinion it seemed wise so to do. Nor has the fact that the officer held a commission for a term of years ever been held to give him greater legal right than though it ran “ during the pleasure of the President.” (5 Op., Embry’s Case, 100 U. S. R., 680.)
The Tenure of Office Act, since repealed, was in force at the time complained of in this case in the form found in sections 1767 and 1768 of the Revised Statutes. It provides in substance, so far as is important to this case, that every person holding any civil office after confirmation by the Senate, shall be entitled to hold it during the term for which he was appointed “ unless sooner removed by and with the advice and consent of the Senate, or by appointment with the like advice and consent of a successor in his place,” with the following exception : During the Senate’s recess the President could suspend any such civil officer, “except judges of the courts of *317 the United States,” until the end of the next session of the Senate, and could designate some suitable person to perform the duties of such suspended officer in the mean time, who should, during the time he performed these duties, be entitled to the salary and emoluments of the office, “ no part of which shall belong to the officer suspended.”
As the claimant was a civil officer, appointed by and with the advice and consent of the Senate, and as he was not, in our opinion, a judge of a “ eourt of the United States,” he was subject to this law, and, as he claims here, for salary, and not for reinstatement in office, his case falls within the decision of the Supreme Court in Embry v. The United States (100 U. S. R., 680), wherein the court said:
“ The question here presented is not one of office, but of salary. Wherever the power of removal from office may rest, all agree that Congress has full control of salaries, except those of the President and the judges of the courts of the United States. The amount fixed at any one time may be added to or taken from at will. No officer, except the President or a judge of a court of the United States, can claim a contract right to any particular amount of unearned compensation. If an officer is not satisfied with what the law gives him for his services he may resign. When Embry was .appointed the President had power to suspend him for cause. The law also provided that if suspended he should draw no salary so long as another person was performing his duties. While he was in office further power of suspension was given the President with a like provision as to pay. He was suspended. The Senate did not see fit to advise or consent to the appointment of another person in his place, and, consequently, on the loth of July, 1870, when the next session of the Senate ended, he became entitled to enter again on the performance of the duties which pertained to his office. * * * His present claim lests not on any contract with the Government either express or implied, but upon the acts of Congress which provide for his salary. * * * To adjudge in his favor would be to make a uew law, not to enforce an old one. Although he was lawfully in office, he was not entitled to pay or emolument while not performing its duties because of suspension.”
Claimant in this case was suspended on the 9th day of November, 1885. Another person was designated to perform the duties of his office, and did so to the date of the claimant’s resignation. We are of opinion that he is not entitled to recover; and the demurrer is sustained, with leave to claimant to have *318 judgment set aside if within ten days he elect to amend his petition.
In the cases of D. H. Pinney v. The United States and W. F. Fitzgerald v. The United States, which present substantially the same facts as the preceding case, the same order was entered.