Nott, Ch. J.,
delivered the opinion of the court:
Upon the facts existing in this case the court has reached the following conclusions:
1. When the compensation of an officer is by the day the Government is entitled to the exemption of an ordinary employer, viz, that of being liable only for the days when the officer is actually employed. But, conversely, the Government, like an ordinary employer, is liable for days when its officers have required the employee to hold himself in readiness for employment or when he is constructively employed by being -placed in circumstances where he can not find other employment and is awaiting work to be furnished to him by the Government officers, or when they allow him to hold himself in readiness in the belief that his service is required or to render service in the belief that it is necessary and proper for him to do so.
2. The power to suspend an officer without compensation ■is incidental to the power to appoint and discharge; that is to say, if the head of a Department, or other appointing *401 power, lias an unlimited power to discharge an officer with or without cause and an unlimited power to reappoint him after an interval of weeks or months, the appointing power can reach the same result by suspending the officer without pay, the modification of means being really for the benefit of the officer. If he objects to this, he must resign; if he remains suspended without resigning, thereby retaining the chance of restoration to the service, he must remain subject to the condition imposed. It is believed that if the court should lay down a rule in such cases which would compel the appointing power to dismiss an officer whose conduct needs investigation it will operate to the disadvantage of the officers and employees in the .civil service. (Howard v. United States, 22 C. Cls. R., 305; United States v. Murray, 100 U. S. R., 536, 538.)
8. In this case the Secretary of the Interior, representing the President, “ suspended ” the claimant “ from duty,” “ pending an investigation of his work and conduct,” on the 15th of May, 1900. Between the 15th of May and the 3d of July, 1900, the Department received a report from the investigating officer which showed that the claimant had been guilty of no graver mistake than following a line of allotments begun by his predecessor in office. On the 3d of July, 1900, the claimant still being in the field, the Secretary of the Interior directed him to return to his home at Omaha, and alloAvecl him pay up to and including the day of his arrival. The order then notified him “ Your pay will cease from and after the date of your arrival at home. Report to this office the date of your arrival.” It is plain that this order did not discharge the claimant from the service or remove him from his office. If it had been so intended, it would have been unnecessary to notify him that his pay was to cease; his pay would, certainly cease when removed from office. His status then was that of an officer awaiting employment and not entitled to his per diem compensation until employed.
4. But between the 3d of July, 1900, and the 12th of April following the claimant made semiweekly reports pur *402 suant to the ordinary routine, and was instructed by the Auditor of the Treasury for the Interior Department that it was his duty so to do. He also made monthly and quarterly reports and weekly reports in duplicate and monthly and quarterly reports in duplicate, and on all of such reports placed the memorandum “At Omaha, Nebr., under telegraphic orders of July 3, from the Hon. W. A. Jones, Commissioner of Indian Affairs.” He also made repeated applications to be informed with regard to the charges against him, without receiving a reply from the Department; and he also wrote to the President of the United States stating the circumstances of his case and that he could obtain no action from the Department. He also was notified in August, 1900, to furnish evidence of the sufficiency and solvency of the sureties upon the official bond which he had executed to the United States.
5. It is plain that if the Interior Department was not satisfied with the report of the investigating agent relating to the claimant’s “ work and conduct,” the order of the 3d of July, 1900, was a mistake. It is plain that it should have explicitly informed the claimant that he was removed from office. It is also plain that the officers to whom his reports were sent allowed him to remain week after week in the belief that he was still an officer acting under his appointment and entitled to employment. An ordinary employer, a railroad or manufacturing company or municipal corporation, in such a case would certainly be held responsible on these facts. But the extent of the claimant’s employment must be limited to the clays on which he was required or allowed to do something, to wit, the days on which he was making out reports and accounts; and these must be limited to two days a week between the 3d of July, 1900, and the 12th of April, 1901, amounting to eighty-one days, at $8 per clay, $648.
The "judgment of the court is that the claimant recover $648.